In The United States District Court
For The Eastern District of Oklahoma

Keenan D. White,
    Plaintiff

V.

Justin Jones, Ron Ward,
Mike Mullins, Warden Marty
Sirmons, Deputy Warden
Kameron Harvonek, Chief
Rick Caywood, John Klink,
Capt. Curtis Hood, Lt. Larry
Jiles, Lt. Daryl Wilson,
Officer David Strobridge,
Officer Steve Kerns, Officer
Brad Mattioda, Officer R. Kelly,
Corporal James Goldringer, Sgt.
Dana Knight And John Doe #1-4

FILED

JUL 01 2013

PATRICK KEANEY
Clerk, U.S. District Court
By _____
Deputy Clerk

Case No.

CIV 13-291-JHP

## Complaint

The Plaintiff, Keenan D. White, Sr., is a 38 year old citizen who has been in the custody of the Department of Corrections ("DOC") for more than a decade at the time that this complaint arose. All of the Defendants are current or former employees of the DOC. Plaintiff is seeking legal relief for his attempted murder in March of 2005, wherein the Defendants either encouraged or were in reckless disregard of the risk to Plaintiff and thereafter abused and/or discriminated against Plaintiff for attempting to petition the government about this event. There is a videotape of this event and Plaintiff, who is appearing pro se, is seeking a Martinez report because the discrimination is ongoing. Plaintiff is also seeking an injunction enjoining the Defendants from further retaliatory discrimination.

## Jurisdiction

-1-

Jurisdiction is conferred by Title 28 U.S.C. Section 1343, which provides for original jurisdiction of this Court in suits authorized by Title 42 U.S.C., Section 1983, to redress the deprivation under color of State Law, statute ordinance, Regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal Rights of citizens or of all persons within the jurisdiction of the United States.

Plaintiff's action for damages is authorized by:

(a) The First, Sixth, Eighth, and Fourteenth Amendment of the Constitution of the United States; and

(b) There may be other causes of action, either under Federal or State Law, which are unknown to the Plaintiff at this time, but may be ascertained by discovery and assert at a later time

## Plaintiff

The Plaintiff, Keenan D. White, Sr., is an African-American citizen. He is in the custody of Cimarron Correctional Facility ("CCF"), at the time the claim(s) arose herein, Plaintiff was housed at the Oklahoma State Penitentiary ("OSP"), which is within the confines and jurisdiction of the court. In 1993, Plaintiff was convicted of Manslaughter and in 1995, he was convicted of Assault and Battery on a Police Officer. Both convictions were from Tulsa, County.

## Defendants

1. The Defendant, Justin Jones, is the Director of DOC;

2. The Defendant, Ron Ward, is the former Director of DOC;

3. The Defendant, Mike Mullins, was the Warden during some of the events in question;

-2-

4. The Defendant, Marty Sirmons, became Warden when Mullins left he withheld my approved transfer;

5. The Defendant, Kameron Harvonek, is the Deputy Warden at OSP;

6. The Defendant, Rick Caywood, is a Chief of Security at OSP;

7. The Defendant, Curtis Hood, is a former Chief of Security at Dick Connors Correctional Facility, but was Captain at OSP at the time the claim(s) alleged in this complaint arose;

8. The Defendant, John Klink, was Acting Unit Manager at OSP;

9. The Defendant, Larry Jiles, was a Lieutenant at OSP;

10. The Defendant, Daryl Wilson was a Unit Manager at OSP;

11. The Defendant, David Strobridge, Steve Kerns, Brad Mattioda, R. Kelly, Corporal James Goldringer, and John Doe's # 1-4 are all correctional officers at OSP;

12. At all time material herein, all of the Defendants were acting in their official capacity, each acting in concert with the other.

## Facts

13. On or about March 23, 2005, Plaintiff was housed at OSP. Two (2) days before, there was an apparent racially related stabbing at Cirmarron Correctional Facility (CCF), wherein the decedent was a member of the United Aryan Brotherhood (UAB), and the alleged assailants were African-American. The media showed pictures of the victim, complete with his swastika tattoo and the coverage featured that the stabbing was allegedly gang related. Approximately two (2) months before at OSP, seven (7) African-American had been stabbed en mass by numerous UAB members. This attack was so vicious that shots were fired from the tower. Racial tensions were high at OSP.
Plaintiff believes that he was set up by the Defendants herein who wanted to see harm done to me.

-3-

14. Nevertheless, on the day in question, Jiles informed Plaintiff that he was being moved to F-4-Run. Plaintiff protested and Jiles said his transfer was on Klink's Authority. Plaintiff asked to speak with Klink and Jiles said he talked to Klink, but that Plaintiff was still being moved. Plaintiff was never allowed to speak to Klink;

15. Inmate Goudeau #199466, acting on Plaintiff's behalf, informed Sgt. Dana Knight the Supervisor of F-4-Run, that a Black inmate (Plaintiff) was being transferred. Knight warned Klink that this was a bad idea, given the racial tension and that she did not want anyone getting killed on her run;

16. Klink ignored Supervisor Knight's warning and ordered her out of his office. After this event, Klink was demoted;

17. Jiles again told Plaintiff to get ready to be moved and Plaintiff protested that he had heard the UAB was blaming the Bloods for the stabbing at CCF and that everyone knew Plaintiff use to be a Blood. Plaintiff is now a practicing Muslim. Jiles said either Plaintiff move or he would be placed on the Segregation Housing Unit (SHU). Thus, Plaintiff was forced to move to an area which primarily housed UAB members on F-4-Run;

18. The next morning Plaintiff was notified he was to go to the yard. As is procedure, Plaintiff was handcuffed behind the back by Strobridge and he stepped from his small two (2) man cell to the hallway. There was no guard present with Plaintiff in the hallway, as should have been according to written procedure. There were two (2) other white inmates nearby and neither of them had a guard watching them - again this was against procedure. Twenty (20) feet away from Plaintiff's cell door was John Doe #1 who was behind the glass in the control room that control the cell doors. Plaintiff Plaintiff was in cell F-4-29, a UAB member was in F-4-30. Cell door #30 was opened and a UAB member, Stacy Elston, rushed Plaintiff with a knife. The DOC report indicates that Elston

did have a handcuff dangling from one hand, but there is no mention of where his custodial guard was or why Plaintiff was alone.

19. Plaintiff was stabbed ten (10) times and had serious damage to his internal organs. Plaintiff was near death, was in ICU for four (4) days, and was hospitalized even longer;

20. Defendant Strobridge was responsible for Plaintiff's protection and safety the day Plaintiff was stabbed. Strobridge disappeared. In the previous attacks on black inmates by UAB members two (2) months earlier, as referenced, Strobridge has also been responsible for the well-being of the black inmates, and he vanished then as well;

21. Lt. Jiles was responsible for Plaintiff's protection and safety the day Plaintiff was stabbed. Lt. Jiles not only disregarded his duty, he actively encouraged the stabbing;

22. Unit Manager Klink was responsible for Plaintiff's protection and safety the day Plaintiff was stabbed. Klink not only disregarded his duty (according to Jiles), he actively encouraged the stabbing;

23. Initially after the attack, Plaintiff was returned to his cell where his cellmate of one day (name unknown) attempted to stop the profuse bleeding. Lt. Wilson then arrived with guards, Mattioda and R. Kelly. Plaintiff was again handcuffed and taken from his cell. Fellow inmates yelled that Plaintiff had been "set up". Plaintiff responded that he agreed and he was calling his lawyer to sue; Wilson punched Plaintiff and ran Plaintiff face into the controlroom window;

24. In response, Wilson told Mattioda and Kelly to take Plaintiff to the stairwell out of view of the camera. There, Wilson told the guards to pin Plaintiff face up against the wall, even though Plaintiff was in great pain. Wilson banged Plaintiff's head against the steel wall, while taunting Keenan about how he was not so big now and my lawyer would not help him now;

25. Rather than take Plaintiff for immediate medical treatment, Wilson ordered Plaintiff to be held up against the wall for twenty (30) minutes, while Plaintiff suffered great pain and loss of blood;

26. While Plaintiff was bleeding in the stairwell and before Plaintiff had been abused and tortured, Lt. Hood arrived and witnessed these events. Hood took no action to protect Plaintiff from Lt. Wilson's abuse, Lt. Wilson is a friend and colleague of Lt. Hood;

27. Thereafter, Plaintiff became eligible for a transfer to a medium level institution and his transfer was held up in retaliation. Two (2) separate attorneys wrote Warden Mullins, questioning why Plaintiff was not being transferred and suggesting it was retaliatory. Several telephone calls were also made by lawyers. Plaintiff languished behind the walls, when he could have been in a medium security facility, earning good time credits and a quicker release as is Plaintiff's rights;

28. Eventually, Plaintiff was transferred to Dick Connors Correctional Facility. However, Lt. Hood, who was then Chief of Security at Dick Connors, wrongly and in retaliation wrote Plaintiff up without any evidence and caused Plaintiff to be immediately transferred back to OSP;

29. During the short time at Dick Connors Correctional Facility, Plaintiff was told by a Sgt. Guess that he had information that Hood had Plaintiff "set up" for the stabbing;

30. Upon his return in August of 2006, Deputy Warden, Kameron Harvonek, told Plaintiff, in the presence of Lane Davis and Capt. Franklin, that Plaintiff did not belong in Administrative Segregation ("A.S."); nevertheless, they placed Plaintiff in A.S. (H-Unit where death row inmates are housed in isolation and 23 hours a day lock down), because of the Governor and others, complaining about the negligence ...

And willful disregard by the state actors against Plaintiff;

31. After I returned to OSP, during a non-random search Plaintiff's cell was searched by Corporal Goldrinder and John Doe #2, wherein these guard were witnessed rifling through Plaintiff's legal papers and, thereafter, Plaintiff's grievances regarding the stabbing were missing.

32. Ron Ward was the Director of DOC at the time of the stabbing. Thereafter, in the presence of Senator Judy McIntye and President of the NAACP Director Roosevelt Milton, and a unknown DOC official that he was bragging about the "swift" retaliation for the stabbing of the inmate at Cirmarron (Leggett). Ward's statement was an admission that he endorsed, condoned and encouraged the unlawful and murderous manipulation of gangs by the government officials to control the inmates. As chief policy maker, Ward's statement was deliberately indifferent to the health and safety Plaintiff and others. Immediately after he made this admission, Ward resigned;

33. Arguendo, Ron Ward was also responsible for assuring that his officers were adequately trained and able to care for circumstances wherein other inmates would threaten the health or safety of an inmate. Ward was deliberately indifferent to his responsibilities and as a direct and proximate result, Plaintiff was injured;

34. Mike Mullins was the Warden during the retaliatory delay in transferring Plaintiff from OSP. Mullins was deliberate indifferent to this retaliation, even though he had been notified of the same by lawyers and administrators. Mullins was also responsible for assuring that his officers were adequately trained and able to care for circumstances wherein other inmates would threaten the health and safety of an inmate. Mullins was deliberately indifferent to his responsibilities and as a direct and proximate result, Plaintiff was injured;

-7-

35. Marty Sirmons was the Warden at the time of Haruonek's retaliatory action. As the Chief policy maker for the institution, Mullins knew, or should have known, that an inmate was being punished for exercising his First Amendment right to petition the government. Sirmons was deliberate indifference to Plaintiff's constitutional rights by allowing his charge to openly and notoriously assert retaliatory discrimination as a matter of policy and allowing the theft of Plaintiff's grievances related to his injuries. Plaintiff fully exhausted all available remedies;

36. Rick Caywood, as Chief of Security, had a duty and responsibility to ensure that his staff was adequately trained. Although Plaintiff is alleging that the actions of Strobridge, Jiles, Hood, Wilson, Kelly, Mathoda and John Doe #1-4 were willful and malicious, in the alternative, Caywood was deliberately indifferent to the care and treatment of his inmates, because he failed to adequately train his staff and as a direct and proximate result, Plaintiff was injured.

37. Plaintiff is still suffering retaliation from the Defendants and eventhough I have been assessed medium points the Defendants refuse to transfer me to my right classification level of security. On July 2, 2012, the date on which the Tenth Circuit dismissed my complaint, I was given a transfer to sign on July 2, 2012 to go to a medium security, however, I was transferred to the maximum unit at the Davis Correctional Facility; On May 30, 2013, I was transferred from Davis Correctional Facility to the maximum unit at Cirmarron Correctional Facility. I am being held at a maximum security where my condition of confinement is much harsher than similarly classified prisoners at a medium security, being at a maximum security places and atypical and significant hardship upon me, and the Defendants are responsible for my being punished punitively in violation of my constitutional rights.

## Count One

38. Plaintiff re-alleges all of the foregoing and further states and alleges;

39. The Jones, Ward, Mullins, Hood, Klink, Jiles, Wilson, Strobridge, Kelly, Mattioda and John Doe #1-4, violated Plaintiff's Right to be free from cruel and unusual punishment as provided in the Eighth Amendment. See: FARMER V. BRENNAN, 511 U.S. 835 (1994);

40. That as a result of their actions, Plaintiff suffered great physical and emotional distress, and pain and suffering to which he is entitled to monetary damages;

## Count Two

41. Plaintiff re-alleges all of the foregoing and further states and alleges;

42. That Jones, Ward, Mullins, Hood, Klink, Jiles, Strobridge, Wilson, Kelly, Mattioda and John Doe #1-4, violated Plaintiff's Right to substantive due process, as provided by the Fourteenth Amendment;

43. That as a result of their actions, Plaintiff suffered great physical and emotional distress, and pain and suffering, to which he is entitled to monetary damages;

## Count Three

44. Plaintiff re-alleges all of the foregoing and further states and alleges;

45. That Jones, Ward, Mullins, Hood, Klink, Jiles, Strobridge, Wilson, Kelly, Mattioda, and John Doe #1-4, violated Plaintiff Right to Redress grievance and access to the court, by stealing Plaintiff's

GRIEVANCE AND legal documents from my cell pertaining to this Action, Plaintiff Claim was previously dismissed on Appeal July 2, 2012;

46. Plaintiff file this Complaint to re-allege All of the foregoing And to state A claim under 42 U.S.C. § 1983;

47. Plaintiff filed a grievance to exhaust All Administrative Remedies, And the Administrative Review Authority responded back And said the grievance issue that I raised was not a grievable issue.

48. Plaintiff has been at a maximum security since being given a false misconduct while at Dick Connors Correctional Facility where Defendant Hood was Chief of Security, the misconduct was retaliation And to give justification to Defendant Hood's Actions, And to send me back to OSP; eventhough I am no longer at OSP I am still being held at a maximum security in retaliation.

49. As a result of their ongoing retaliation, Plaintiff suffered great physical and emotional distress, And pain and suffering to which he is entitled to monetary damages.

50. Plaintiff believes that he is in imminent danger of serious physical injury. The Defendants named herein has acted with a malicious intent to have harm done to me, they participated in retaliatory conduct And set me up to get stabbed ten (10) times, they are still harassing and retaliating by denying me transfer to a lower security, After being approved for lower security.
Plaintiff believe that the magnitude and consequences of this of this Action has caused the Defendants to use their authority to retaliate against me, and this Action will cause them to continue their systematic harass, by not allowing me the same rehabilitative opportunity as prisoners assessed at my security level, I am being held at a maximum security

As punishment for my past, present and future right to exercise my constitutional rights.

## Request For Relief

Accordingly, Plaintiff prays for:

A. $100,000.00 in actual damages per defendant;

b, $500,000.00 in punitive damages per defendant;

C. A Martinez Report, including the videotape of the unprovoked stabbing which addresses the issues raised in this Complaint;

d. An injunction enjoining DOC and CCA official from any further retaliatory conduct and actions against Plaintiff;

E. Any such other relief at law or equity which the Court deems just and proper; including special finding in law.

Respectfully submitted,

Keenan D. White, Sr.
DOC/CCF #220319
EC-116
3200 S. Kings Hwy.
Cushing, Okla.
74028

-11-

State of Oklahoma )
                  )  SS.
County  PAYNE     )

Affidavit by KEENAN D. White, Sr.

I, KEENAN D. White, Sr., of lawful age, being first duly sworn, deposes and says as follows:

1. I filed the foregoing 42 U.S.C.§1983 against the named Defendants for violating my constitutional rights, the claims are true and correct.

2. Attorney Janet Rolloff was representing me in **White v. Ward**, CIV.07.85. FHS.SPS, she has withheld all of my legal documents pertaining to this matter, she was suppose to bring me my legal documents, but she **NEVER** have.

3. My delay in filing this action is due to Janet Rolloff withholding my legal documents, as she did not bring them to me as she said she would, I have talked with her several times this year (Jan. 2013), and the phone record from the Davis Correctional Facility will support this fact. I am a layman in the law and the maximum facility I am housed at do not have a law library or anyone trained in the law to help me.

4. Attorney Janet Rolloff is purposefully withhold my legal documents to prevent me from refiling this complaint. I am seriously considering filing a complaint to the Oklahoma Bar Association concerning Janet Rolloff for her malicious actions, especially after she has been paid.

5. I did exhaust all available remedies, in Aug. 2006 while at OSP Lt. Jiles ordered Goldringer and John Doe #2 to search my cell and remove my evidence and legal documents in retaliation for filing **White v. Ward** CIV.07.85.FHS.SPS

Subscribed and Sworn to before me this 21st day of June 2013.

Kristi A. Murrell  03013057
NOTARY PUBLIC   COMMISSION NUMBER

_Affiant's Signature_

EXPIRATION DATE: 10-23-15

KRISTI A. MURRELL
NOTARY PUBLIC
# 03013057
EXP. 10/23/15
STATE OF OKLAHOMA