# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KEENAN D. WHITE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV 13-291-JHP-SPS |
| | ) | |
| **JUSTIN JONES, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Cimarron Correctional Facility in Cushing, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at numerous DOC and private prisons. The defendants are former DOC Directors Justin Jones and Ron Ward, as well as the following officials of Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma: Warden Mike Mullins, Warden Marty Sirmons, Deputy Warden Kameron Harvanek, Chief of Security Rick Caywood, Acting Unit Manager John Klink, Chief of Security Capt. Curtis Hood, Lt. Larry Jiles, Unit Manager Daryl Wilson, and Correctional Officers David Strobridge, Steve Kerns, Brad Mattioda, R. Kelly, and Cpl. James Goldringer. Also named as defendants are Sgt. Dana Knight and John Does 1-4.[1, 2]

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state

Plaintiff raises three grounds for relief in his complaint. Count I alleges he was subjected to cruel and unusual punishment, in violation of the Eighth Amendment. In Count II he claims he was denied due process, in violation of the Fourteenth Amendment. He asserts in Count III that the defendants violated his right of access to the courts and his right to redress grievances.

Plaintiff alleges that at the time of the incident at issue, racial tensions at OSP were high between African American inmates and inmates associated with the United Aryan Brotherhood (UAB). On or about March 23, 2005, Defendant Jiles informed plaintiff that he was being moved to the F-4 Run at OSP. When plaintiff protested, Jiles told him the transfer was authorized by Defendant Klink. Plaintiff's request to speak with Klink was not answered.

Inmate Goudeau, acting on plaintiff's behalf, told Defendant Knight, the F-4 Run supervisor, that plaintiff, a black inmate, was being transferred. Knight said this was a bad idea, given the racial tension. Klink allegedly ignored Knight's warning.

Jiles again told plaintiff to prepare to move, and plaintiff protested that he had heard the UAB was blaming the Bloods for a recent stabbing fatality at Cimarron Correctional Facility, and everyone knew that plaintiff previously was a member of the Bloods. Jiles said that if plaintiff did not move, he would be placed in the segregation housing unit. Therefore, plaintiff was forced to move to an area on F-4 Run that housed mostly UAB members.

---

official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

[2] Defendants Ron Ward, Marty Sirmons, Curtis Hood, Larry Jiles, Daryl Wilson, Steve Kerns, Brad Mattioda, James Goldringer, Dana Knight, and John Does 1-4 have not been served.

The next morning plaintiff was notified to go to the yard. In accordance with facility procedures, Defendant Strobridge handcuffed him behind his back. When plaintiff stepped from his cell to the hallway, no guard was present with him, contrary to written procedure. There, however, were two unguarded white inmates nearby, also allegedly contrary to procedure.

John Doe #1 was behind the glass in the control room, about 20 feet from plaintiff's cell door. The door to UAB member Stacy Elston's cell was opened, and Elston rushed plaintiff with a knife. Elston had a handcuff dangling from his hand, but no custodial guard was with him. Defendant Strobridge allegedly "vanished."

Plaintiff claims he was stabbed ten times and suffered serious damage to his internal organs. He further asserts he was in ICU for four days and was hospitalized beyond that time.

According to plaintiff, he initially was returned to his cell, where his cellmate attempted to stop his profuse bleeding. Defendant Wilson arrived with Defendants Mattioda and Kelly. Plaintiff again was handcuffed and taken from his cell, and other inmates began yelling that he had been "set up." Plaintiff agreed and said he was calling his lawyer to sue. Wilson allegedly punched plaintiff and ran his face into the control room window.

Wilson next told Mattioda and Kelly to take plaintiff to the stairwell out of view of the camera. Defendant Hood arrived and witnessed the following events. Wilson told the guards to pin plaintiff's face against the wall, even though he was in great pain. Wilson banged plaintiff's head against the steel wall, taunting him that he was not so big now, and his lawyer would not help him now. Wilson then ordered plaintiff held against the wall for twenty minutes, although he was losing blood.

3

After this incident, plaintiff eventually became eligible for a transfer to a medium security facility, but his transfer allegedly was delayed in retaliation. Two attorneys wrote and called Defendant Warden Mullins, questioning why plaintiff had not been transferred and suggesting it was because of retaliation. Eventually, he was transferred to Dick Conner Correctional Center (DCCC) in Hominy, Oklahoma. During plaintiff's time at that facility, Sgt. Guess told him that Defendant Hood had set him up for the stabbing. Hood was Chief of Security at DCCC during plaintiff's incarceration there. Plaintiff claims Hood wrongfully wrote him up without any evidence and out of retaliation, and plaintiff immediately was transferred back to OSP.

Upon plaintiff's return to OSP in August 2006, Deputy Warden Harvanek told plaintiff, in the presence of Lane Davis and Capt. Franklin, that he did not belong in administrative segregation. Plaintiff, however, was placed in administrative segregation, which is where death-sentenced inmates are housed in isolation with a 23-hour lockdown.

After plaintiff returned to OSP, Defendants Goldringer and John Doe #2 performed a "non-random search" of his cell. Witnesses saw Goldringer and Doe #2 rifling through plaintiff's legal papers, and plaintiff subsequently found his grievances concerning the stabbing were missing.

Plaintiff contends he still is suffering from acts by the defendants. He has been assessed medium security points but has been denied a transfer to his correct security level. On July 2, 2012, the date the Tenth Circuit Court of Appeals affirmed this court's denial of his previous complaint concerning these matters, he was asked to sign a transfer. He was supposed to go to Davis Correctional Facility, a medium security private prison in Holdenville, Oklahoma, but instead was transferred to the maximum security unit at that

4

facility. On May 30, 2013, he was transferred again to the maximum security unit at Cimarron Correctional Facility, where his conditions of confinement are much harsher than those experienced by similarly classified prisoners at a medium security prison.

The defendants have filed a motion to dismiss, alleging the doctrine of collateral estoppel prohibits plaintiff from litigating issues previously determined on summary judgment in *White v. Mullins*, CIV 07-085-FHS-SPS (E.D. Okla. Mar. 31, 2011), *aff'd*, No. 11-7030 (10th Cir. May 18, 2012). Furthermore, the defendants assert plaintiff has failed to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

> [T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007). . . . "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (emphasis omitted).

In assessing a motion to dismiss, the court must accept the factual allegations as true and consider them in the light most favorable to the plaintiff. *Tomlinson v. El Paso Corp,*, 653 F.3d 1281, 1285–86 (10th Cir. 2011) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 132 S.Ct. 1574 (2012)). A request for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB–TV,*

*L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 555–56 and *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)).

Collateral estoppel is the legal principle that prevents a party from relitigating an issue that already has been decided. *Smith v. Dinwiddie*, 510 F.3dd 1180, 1186 (10th Cir. 2007), *cert. denied*, 553 U.S. 1035 (2008). Collateral estoppel has the dual purpose of protecting the litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. *Blonder-Tongue Lab., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 328-29 (1971).

> Collateral estoppel bars the adjudication of a particular claim in a subsequent proceeding when four elements are met. Those elements are (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Smith*, 510 F.3d at 1188.

Here, the constitutional claims and the named defendants in the present complaint are the same as those in plaintiff's 2007 lawsuit, with the exception of the addition of Defendant Justin Jones. *See White*, No. CIV 07-085-FHS-SPS. Any claims against Defendant Jones, however, are barred by Oklahoma's two-year statute of limitations. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). The present complaint is a handwritten version of plaintiff's previous amended complaint, including errors. As an example, both cases allege plaintiff is 38 years old, when he was 44 years old at the time he filed the current complaint.

After the court adjudicated plaintiff's claims in the 2007 case, he appealed. The Tenth Circuit Court of Appeals affirmed, finding, "[t]he district court was correct that a reasonable

factfinder could not find [that plaintiff successfully exhausted his claims] and that Mr. White's assertion of exhaustion is just that, an assertion unsupported by facts or even any allegations of fact." *White v. Mullins*, 466 F. App'x 754, 755 (10th Cir. 2012) (citation omitted) (unpublished).

In the present case, plaintiff is raising the same grounds for relief that were presented in the 2007 complaint. He does not assert he exhausted or attempted to exhaust the administrative remedies for his claims since the first lawsuit was filed. Instead, he has filed an affidavit claiming he exhausted his remedies in 2006, and his attorney withheld his legal documents to prevent him from filing the complaint in this action. (Docket No. 1 at 12). The court, therefore, finds plaintiff has failed to state a claim that he has exhausted his administrative remedies. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("If the complaint had made it clear through [plaintiff's] affirmative statements that he had not exhausted his administrative remedies, the district court could have raised the exhaustion question *sua sponte*, consistent with 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. §§ 1915 and 1915A . . . .").

The court further finds that plaintiff has failed to state a retaliation claim. It is well settled that "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). But "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Id.* Thus, to prevail on a claim for retaliation, a prisoner must show that, "but for" the retaliatory motive, the adverse action would not have taken place. *Id.* "An inmate claiming retaliation must allege *specific facts* showing retaliation because

7

of the exercise of the prisoner's constitutional rights." *Id.* (citations omitted) (emphasis in original).

Here, plaintiff has provided only conclusory allegations without identifying which defendant harmed him. Further, he has not presented specific facts showing retaliation based on the exercise of his constitutional rights. It is well established that a change in a prisoner's security classification does not implicate a violation of constitutional rights. *See Templeton v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (holding that a prisoner "is not entitled to a particular degree of liberty in prison"). *See also Brown v. Champion*, No. 95-5061, 1995 WL 433221, at *1 (10th Cir. July 24, 1995) (finding *Sandin v. Conner,* 515 U.S. 472 (1995), makes it clear that an Oklahoma inmate has no constitutional liberty interest in reclassification, as classification is "entirely discretionary" with Oklahoma prison officials); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement").

Plaintiff's allegations of harsh prison conditions also fail to state a claim. "The Constitution does not mandate comfortable prisons," and the conditions imposed may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Plaintiff's bare-bones, conclusory assertions, without more, fail to raise his "right of relief above the speculative level." *Twombly*, 550 U.S. 555. Therefore, he has failed to state a claim regarding his facility transfers and the conditions of his confinement.

Finally, plaintiff's conclusory allegations that the defendants participated in retaliatory conduct also are meritless. He merely names defendants collectively without specifying which defendants did what to him and continues to complain of his security status. Without making it "clear exactly *who* is alleged to have done *what* to *whom*, to provide each

8

individual with fair notice as to the basis of the claims against him or her," plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250-52; *Twombly*, 550 U.S. at 545.

His request for a permanent injunction to enjoin DOC and Correctional Corporation of America officials from further retaliating against him also must be denied.

> For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007). "A permanent injunction cannot be granted if any of the four requirements has not been met." *Utah Envtl. Cong. v. United States Bureau of Land Mgmt.*, 119 F. App'x 218, 220 (10th Cir. Dec. 15, 2004) (unpublished).

After careful review, the court finds all of plaintiff's allegations regarding retaliatory conduct are merely conclusory recitations of the elements of a cause of action. He fails to identify which defendant participated in the alleged unconstitutional acts or why he is in imminent danger of serious physical injury. Therefore, his request for an injunction must be denied.

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals consistently has held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine*

*v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** the defendants' motion to dismiss (Docket No. 45) is GRANTED, and this action is in all respects, DISMISSED AS FRIVOLOUS, pursuant to 28 U.S.C. § 1915(e)(2). This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g).

DATED this 30th day of September 2014.

James H. Payne
United States District Judge
Eastern District of Oklahoma